

**FILED**

**JUN 0 2 2005**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE REBECCA R. PALLMEYER
UNITED STATES DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 03 CR 851-1 |
| ) | Judge Rebecca R. Pallmeyer |
| SILESIA FLAVORINGS, INC. ) | |

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, SILESIA FLAVORINGS, INC. and its attorney, SCOTT R. LASSAR, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and is governed in part by Rule 11(c)(1)(C) as more specifically set forth in Paragraph 17 below.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 03 CR 851.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, SILESIA FLAVORINGS, INC., and its attorney, SCOTT R. LASSAR, have agreed upon the following:

1. Defendant's authorized representative (hereinafter "defendant") acknowledges that Silesia Flavorings, Inc. has been charged in the indictment in this case with (a) in Counts Two

through Eight, recklessly causing the transportation in air commerce of property containing hazardous material, specifically, flammable liquids, in violation of regulations and requirements related to the transportation of hazardous material prescribed by the Secretary of Transportation, in violation of Title 49, United States Code, Section 46312, and Title 18, United States Code, Section 2; and (b) in Counts Nine through Fifteen, transporting and causing the transportation of the flammable liquids in wilful violation of regulations prescribed by the Secretary of Transportation relating to the safe transportation of hazardous material, in violation of Title 49, United States Code, Section 5124, and Title 18, United States Code, Section 2.

2. Defendant has read the charges against it contained in the indictment, and those charges have been fully explained to it by its attorney.

3. Defendant fully understands the nature and elements of the crimes with which it has been charged.

4. Defendant will enter a voluntary plea of guilty to Counts Fourteen and Fifteen of the indictment charged against it in this case.

5. Defendant will plead guilty because it is in fact guilty of Counts Fourteen and Fifteen contained in the indictment. In pleading guilty, the defendant admits the following facts and that those facts establish its guilt and relevant sentencing facts beyond a reasonable doubt:

On or around the dates set forth below, at Hoffman Estates, in the Northern District of Illinois, and elsewhere, SILESIA FLAVORINGS, INC. (SILESIA) transported and caused the transportation of the flammable liquids in the approximate amounts and approximate flash points described below in wilful violation of regulations prescribed by the Secretary of Transportation relating to the safe transportation of hazardous material, specifically, Title 49, Code of Federal

Regulations, Sections 172.200(a), 172.202(a), 172.301(a), 172.204(a), 172.300, 172.301(a), 172.304, 172.400(a), 172.406(a), 172.407, 172.419, 173.1(b), 173.24, 173.22(a), and 173.27 172.202(a), 172.301(a), 172.400(a), and 173.27(c):

| Count | Date | Amount of Hazardous Material / Flash Point |
|---|---|---|
| 9 | 4/30/98 | 50g (59.1 ml)<br>Flash Point = 47° C (116.6° F) |
| 10 | 5/11/98 | 50g (47.7 ml)<br>Flash Point = 49° C (120.2° F) |
| 11 | 5/11/98 | 50g (54.4 ml)<br>50g (55.3 ml)<br>Flash Point = 54° C (129.2° F) |
| 12 | 2/5/99 | 20kg (19.7 l)<br>Flash Point = 36° C (96.8° F) |
| 13 | 2/5/99 | 10kg (9.7 l)<br>Flash Point = 54° C (129.2° F) |
| 14 | 12/19/99 | 15kg<br>Flash Point = 18° C (64.4 °F) |
| 15 | 1/22/00 | 500ml<br>Flash Point = 25° C (77 °F) |

Specifically, SILESIA was an international manufacturer and distributor of liquid flavoring extracts, that is, chemicals used to flavor food products. In or around 1997, SILESIA commenced doing business in Illinois. SILESIA was an Illinois corporation based in Elk Grove Village until in or around January 1999, when SILESIA moved to Hoffman Estates, Illinois. Since the start of SILESIA's Illinois operations, co-defendant Ortwin Winter was Executive Vice-President and was responsible for SILESIA's operations, including sales made by the Illinois office to customers in

Latin America and other foreign nations. Co-defendant Juan Carlos Rodas-Misa was a salesperson for SILESIA based in the Hoffman Estates office.

Starting no later than in or about April 1998, and continuing through in or about January 2000, SILESIA, Winter, and Rodas-Misa caused the shipment of hazardous materials by aircraft, and did not properly declare, package, mark, and label the hazardous materials as required by Department of Transportation regulations. In particular, the defendants caused the shipment, via express air delivery service, of concentrated liquid flavorings manufactured by SILESIA that were flammable liquids, on or about the dates and for the flammable liquids listed above for Counts Nine through Thirteen. The defendants misled the shipping company by failing to inform the shipper that SILESIA was sending flammable liquids in the particular shipment, causing the flammable liquids to be improperly declared, packaged, marked, and labeled.

In addition to shipping flammable liquids by express delivery service, at various times Winter also encouraged and allowed Rodas-Misa to place flammable liquids in Rodas-Misa's personal luggage, knowing that Rodas-Misa would then transport the flammable liquids on a passenger aircraft. For example, with respect to Count Fourteen of the indictment, on or around December 19, 1999, at the direction of Winter, Rodas-Misa transported 15 kilograms of a flammable liquid with a flashpoint of approximately 18 °C (64.4 °F) on board a commercial airline passenger flight from Chicago, Illinois to Monterrey, Mexico without properly declaring, packaging, marking, and labeling the flammable liquid. Prior to Rodas-Misa's flight, Winter notified Executive A, the Chief Executive Officer of Silesia's parent corporation in Germany, and sought Executive A's approval for the transportation by passenger flight, by sending an electronic-mail message on or around December 18, 1999, stating in part that the flammable liquid "has a relative[ly] low ignition point,

the matter isn't completely legal and everyone here (with the exception of Carlos and me) is shitting in their pants. But I think we should take the low risk of getting caught in order to help the customer in an emergency."

Similarly, with respect to Count Fifteen of the indictment, Winter knew that, on or around January 22, 2000, Rodas-Misa attempted to transport approximately 500 milliliters of a flammable liquid with a flashpoint of approximately 25° C (77 °F) by attempting to bring the flammable liquid on board a commercial airline passenger flight from Chicago, Illinois to Mexico without properly declaring, packaging, marking, and labeling the flammable liquid. The Federal Aviation Administration (FAA) intercepted and seized the flammable liquid before Rodas-Misa brought the flammable liquid on board. After the seizure, on or around February 10, 2000, Winter refused a SILESIA employee's request to comply with hazardous materials regulations in future flammable liquids shipments. Winter instructed the SILESIA employee to ship flammable liquids as non-hazardous materials if it was necessary to satisfy customer demand for quick delivery or to save shipping fees. Winter explained that SILESIA was "paid a little bit more to take that risk," and that the customer who received the previous December 19, 1999 flammable liquid transported by Rodas-Misa on a passenger aircraft "wrote me a letter thank you that you took that risk to do that."

6.  For purposes of calculating the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree that the Guideline Manual effective November 1, 2004 is applicable and further agree on the following points:

(a) Pursuant to Guideline § 8C2.1, the monetary fine Guidelines do not apply to offenses governed by § 2Q1.2.

5

(b) Pursuant to Guideline § 8C2.10, the Court should determine an appropriate fine by applying the provisions of 18 U.S.C. §§ 3553 and 3572. As further governed by Paragraph 17 of this Plea Agreement, the parties agree that a fine of $130,000 would reasonably reflect defendant's conduct in this case and would be consistent with the factors enumerated in 18 U.S.C. §§ 3553 and 3572.

(c) The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or Court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw its plea on the basis of such corrections.

8. Defendant understands that, in imposing the sentence, the Court will be guided by the United States Sentencing Guidelines. The defendant understands that the Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. Defendant understands the counts to which it will plead guilty carries the following penalties: pursuant to 18 U.S.C. § 3561(c), a maximum term of probation of five years; and a

maximum fine of $500,000. Accordingly, the combined maximum penalties for the two counts of conviction are a maximum term of probation of five years and a maximum fine of $1,000,000.

10. Defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $400 on the counts to which it has pled guilty. The defendant agrees to pay the special assessment of $800 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

11. Defendant understands that by pleading guilty it surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against it, it would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and its attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict it unless, after hearing all the evidence and considering each count separately, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and its attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in its own behalf. If the witnesses for defendant would not appear voluntarily, it could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that it could decline to testify, and no inference of guilt could be drawn from its refusal to testify. If defendant desired to do so, it could testify in its own behalf.

12. Defendant understands that by pleading guilty it is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to it, and the consequences of its waiver of those rights. Defendant further understands it is waiving all appellate issues that might have been available if it had exercised its right to trial, and only may appeal the validity of this plea of guilty.

13. Defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statutes of conviction (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives its right to challenge its sentence

or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

14. Defendant understands that the indictment and this Plea Agreement are matters of public record and may be disclosed to any party.

15. Defendant understands that its obligations under this Plea Agreement survive any change in its corporate name, form, or status.

16. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against it, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

17. This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a fine of $130,000. Other than the agreed monetary fine, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed fine set forth, the defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(c) or (d). If, however, the Court refuses to impose the agreed fine set forth herein, thereby rejecting the Plea Agreement, or otherwise refuses to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

18. After the sentencing of the defendant, the government will move to dismiss the remaining counts of the indictment.

19. Defendant understands that its compliance with each part of this Plea Agreement extends throughout and beyond the period of its sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. It further understands that in the event it violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement of such prosecutions.

20. Defendant and its attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

21. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

22. Should the judge refuse to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

23. Defendant's authorized representative has obtained a corporate resolution authorizing the representative to enter the pleas of guilty and this Plea Agreement.

24. Defendant acknowledges that it has read this Agreement and carefully reviewed each provision with its attorney. Defendant further acknowledges that it understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 6/2/05

PATRICK J. FITZGERALD
United States Attorney

Authorized Representative
for SILESIA FLAVORINGS, INC.

EDMOND E. CHANG
Assistant United States Attorney

SCOTT R. LASSAR
Attorney for Defendant